Opinion for the court filed PER CURIAM.
Dissenting opinion filed by NEWMAN, Circuit Judge.
PER CURIAM.
I
This case began when Technology Licensing Corporation (“TLC”) filed a complaint against Videotek, Inc., in the United States District Court for the Northern District of California, alleging that Video-tek had infringed four patents owned by TLC. Videotek then served a complaint upon its supplier, Gennum Corporation, seeking to establish a right to indemnification in the event Videotek was held liable to TLC. In response, Gennum filed a declaratory judgment action against TLC, seeking a declaration that TLC’s asserted patents were invalid, unenforceable, and not infringed. Gennum requested a jury trial on its complaint. TLC counter *1287 claimed, alleging that Gennum was liable for direct and contributory infringement of the four asserted patents. TLC and Vi-deotek then entered into a settlement agreement that resulted in a consent decree disposing of the action between those two parties. That settlement, however, did not affect Gennum’s declaratory judgment action against TLC.
Prior to the trial of the case involving Gennum and TLC, Gennum filed a motion in limine challenging TLC’s formula for measuring damages. After a hearing, the district court entered an order that had the effect of significantly reducing the amount of damages TLC would be able to recover from Gennum if infringement were found. Following that order, TLC withdrew its claim for damages for past infringement and notified the district court that it would seek only injunctive relief against future infringement. Gennum then withdrew its request for a jury trial. TLC, however, maintained that it was still entitled to a trial by jury. Noting that Gennum was seeking to invalidate the patents, TLC argued that a declaratory judgment action to invalidate a patent is an action to which the right of trial by jury attaches, regardless of the type of relief sought by the patentee. The magistrate judge, however, ruled otherwise.
The magistrate judge began by recognizing that in Tegal Corp. v. Tokyo Electron America, Inc., 257 F.3d 1331 (Fed. Cir.2001), this court held that there is no right to a jury trial when the only remedy sought by the plaintiff-patentee is an injunction and the defendant has asserted patent invalidity as an affirmative defense. The court noted that Tegal was not directly on point because in that case the issue of invalidity was asserted only as an affirmative defense and not as an independent claim. In this case, by contrast, the issue of invalidity was asserted as an independent claim (by the declaratory judgment plaintiff, Gennum). The question posed to the court was whether that distinction made a difference for purposes of the right to a jury trial.
In analyzing that issue, the magistrate judge followed this court’s decision in In re Lockwood, 50 F.3d 966 (Fed.Cir.), vacated, 515 U.S. 1182, 116 S.Ct. 29, 132 L.Ed.2d 911 (1995), which in turn relied on Tull v. United States, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). The court cited those decisions for the proposition that the Seventh Amendment requires a jury trial in any action that is analogous to a suit at common law as of the time the Seventh Amendment was adopted. To resolve that question, the court noted, called for the application of a two-part test. First, a court must compare the action with the analogous action brought in the courts of England during the eighteenth century, prior to the merger of law and equity. Second, a court must look to the remedy sought and determine whether it is legal or equitable in nature. The magistrate judge stated that “application of the second prong of the Tull analysis, which pertains to the nature of the remedy sought, the most important factor for the court to consider according to Tegal, is relatively straightforward. Once TLC withdrew its claim for damages, all of the claims asserted by either party that remain to be tried are indisputably equitable in nature.” Application of the first prong of the Tull analysis, the court acknowledged, was “more challenging.” Invoking this court’s decision in Lockivood, the magistrate judge explained that, at common law, allegations of patent infringement could be raised either in an action at law or in a suit in equity. The choice of forum and remedy, and thus of the method of trial, was left to the patentee. If the patentee sought only damages, he filed an action in a court of law. If he sought only to enjoin future acts of infringement, he could only bring a suit in equity.
*1288 The magistrate judge concluded that an action for a declaratory judgment of invalidity in which a counterclaim of infringement has been filed is most closely analogous to an action at common law for infringement in which a defense of invalidity was asserted. Accordingly, in determining whether the action was triable to a jury, the court looked to whether the patentee had sought damages or only an injunction, which would have been the dis-positive question at common law for purposes of determining whether the action could be brought at law or in equity. Because TLC was seeking only equitable relief, the court concluded that the action would have been brought in equity, and that no jury trial would have been available. For that reason, the court ruled, TLC was not entitled to a jury trial in this case.
TLC petitioned this court for a writ of mandamus to compel the district court to grant its request for a jury trial. Because “the right to grant mandamus to require jury trial where it has been improperly denied is settled,” Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 511, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), we have entertained TLC’s mandamus petition in order to decide whether the district court erroneously denied TLC’s request for a jury trial. See also Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (noting “the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury”). Although we, like the magistrate judge, consider the issue to be close, we concur in the analysis and conclusion reached by the magistrate judge that TLC was not entitled to a jury trial under our decisions and those of the Supreme Court. We therefore deny the petition for mandamus.
II
This court’s decision in Tegal is analogous to this case in some respects, but not all. In Tegal, the plaintiff filed an action for patent infringement but sought only an injunction by way of relief. The defendant raised the affirmative defense of invalidity. The district court denied the plaintiffs request for a jury trial, and this court upheld that decision. We held that a jury trial was not available because the plaintiff had sought only an equitable remedy and because in an analogous action in eighteenth century England, the patentee’s decision to seek only an injunction would require that the suit be brought in equity, not at law. Tegal, 257 F.3d at 1340 (“[Gjiven Tegal’s interest only in an injunction, it is clear that Tegal would have needed, in eighteenth century England, to bring its case in a court of equity.”). As a result, we held that the trial court had properly denied the request for a jury trial as to both infringement and validity. Id. at 1340^1.
This case differs from Tegal in two respects. First, the accused infringer has raised invalidity as a separate claim, not as an affirmative defense. Second, the accused infringer is aligned as the third-party plaintiff, while the patentee is aligned as a third-party defendant and counterclaimant. The second distinction is unimportant. We have made clear that for purposes of the right to a jury trial in patent cases, it is inconsequential whether the parties are aligned in the conventional manner (patentee as plaintiff and accused infringer as defendant and invalidity counterclaimant) or in the manner that results when the accused infringer initiates the action as a declaratory judgment (accused infringer as plaintiff and patentee as defendant and infringement counterclaim-ant). See Lockwood, 50 F.3d at 974-75.[1] *1289 The first distinction, however, is important, and it is upon that distinction that the parties focus their arguments.
Relying on Lockwood, TLC argues that a patentee has a right to a jury trial in any declaratory judgment action to determine patent validity. TLC contends that either party has a right to a jury trial in such a declaratory judgment action, regardless of whether damages are sought in a separate cause of action, such as a related action for infringement.
In fact, Lockwood is not as broad as TLC’s characterization suggests. After analyzing the nature of a declaratory judgment action for patent invalidity and the pertinent historical background, the court in Lockwood noted that an action for invalidity could not be brought at common law, and it held that a patent infringement action with a counterclaim of invalidity “resembles nothing so much as a suit for patent infringement in which the affirmative defense of invalidity has been pled.” 50 F.3d at 974. The court noted that in such common law actions, the patentee could elect whether to proceed at law or in equity, based on the remedy sought, and the right to a jury would depend on the patentee’s choice:
If the patentee sought only damages, the patentee brought an action at law; in such a case, the defense of invalidity was tried to the jury, assuming that a jury had been demanded.... However, if the patentee facing past acts of infringement nevertheless sought only to enjoin future acts of infringement, the patentee could only bring a suit in equity, and the defense of invalidity ordinarily would be tried to the bench.
Lockwood, 50 F.3d at 976 (emphasis in original). Thus, the court concluded, under both English and American practice “it was the patentee who decided in the first instance whether a jury trial on'the factual questions relating to validity would be compelled.” Id.
In Lockwood, the patentee had not elected to limit himself to an equitable remedy. Although the issue of infringement had been removed from the case by summary judgment, the Lockwood court nonetheless considered whether the patentee had forfeited his right to a jury trial by taking any steps that would have required him, historically, to file his case in equity. The Lockwood court looked at the declaratory judgment counterclaim as an inverted action for infringement in which the patentee had not surrendered his right to a jury. Therefore, the patentee retained his right to a jury trial on the counterclaim. In this case, by contrast, the patentee has voluntarily abandoned its claim for damages and is proceeding only on a request for equitable relief. Thus, the declaratory judgment action in this case is an inverted form of an infringement action in which the patentee has sought only an injunction. In the historically analogous setting of a patent infringement suit with an invalidity defense, the case would therefore have been tried in an equity court, where neither party would be entitled to a jury. For that reason, as the magistrate judge correctly held, Lockwood’s historical analysis dictates that TLC’s decision to seek only *1290 an injunction meant that it lost its right to a jury on the related invalidity claims.
TLC also contends that Lockwood stands for the proposition that the writ of scire facias is an historical antecedent of the declaratory judgment claim of patent invalidity and that because the writ of scire facias was triable to a jury, the modern claim of patent invalidity should also be triable to a jury. Lockwood, however, did not accept the argument that the writ of scire facias was a “close eighteenth-century analog to a modern action for a declaration of patent invalidity,” as TLC contends. In fact, Lockwood stands for the opposite proposition. The court in Lockwood specifically stated that a proceeding on a writ of scire facias was not analogous to a suit for a declaration of invalidity, but was more akin to an action for inequitable conduct. See Lockwood, 50 F.3d at 974 n. 9 (“The contemporary analog of the writ is thus an action 'for a declaration of unenforceability due to inequitable conduct, not due to invalidity.”). Although the court in Lockwood went on to explain that the result in that case would not have been different if the historical analogy to the writ of scire facias were valid, the court plainly stated at the outset of that discussion that it did not regard that analogy as valid. Thus, Lockwood’s treatment of the writ of scire facias do.es not support TLC’s claim of a right to a jury trial.[2]
In sum, Lockwood does not stand for the proposition that a counterclaim for invalidity always gives rise to a right to a jury trial (for either party) on the ground that it is an inverted infringement action and that a patentee at common law had the right to a jury by filing an infringement action and seeking damages. Instead, the more accurate reading of Lockwood is that (I) it preserves to the patentee the right to elect a jury by seeking damages in an infringement action or counterclaim, and (2) the accused infringer or declaratory judgment counterclaimant is entitled to a jury trial only if the infringement claim, as asserted by the patentee, would give rise to a jury trial.' Thus, if the patentee seeks only equitable relief, the accused infringer has *1291 no right to a jury trial, regardless of whether the accused infringer asserts invalidity as a defense (as in the Tegal case) or as a separate claim (as in this case).
Applying the analysis of Lockwood and Tegal to the facts of this case .leads to the conclusion that if TLC had filed a standard infringement action as plaintiff and had requested only an injunction, neither TLC nor Gennum would have been entitled to a jury trial, regardless of whether Gennum raised invalidity as a defense or in a counterclaim. By choosing the equity route for its infringement action, TLC would have ensured that neither claim would be triable to a jury. For that reason, the inverted lawsuit, with Gennum as plaintiff and TLC as defendant, seeking only equitable relief on its claim of infringement, confers no jury trial right on TLC.
Because a party such as TLC will ordinarily be able to dictate whether it will have a jury trial by choosing whether to limit itself to equitable relief, the problem faced by TLC is not likely to recur with frequency in conventional infringement actions. That may be the reason that there are relatively few precedents directly applicable here. Nonetheless, there is at least one prior appellate decision dealing with a similar fact setting, and in that case the appellate court reached the same conclusion that we reach here — that the pat-entee’s decision to seek only equitable relief resulted in the entire case, including the invalidity claims, being triable to the court, without a jury. See Shubin v. United States Dist. Court, 313 F.2d 250 (9th Cir.1963). Indeed, this court in Lockwood distinguished the Shubin case on the ground that there the patentee had limited its infringement counterclaim to a request for an injunction against future infringement, having stipulated to the absence of any claim for infringement damages. Lockwood, 50 F.3d at 977. That ground of distinction provides further support for the conclusion that Lockwood stands for the proposition that if the patentee has abandoned any claim for damages, the related invalidity claims are triable to the bench, not to a jury. Several other district courts have reached the same conclusion as the court of appeals in Shubin and the court in this case, based on similar reasoning. See Kao Corp. v. Unilever United States, Inc., 2003 WL 1905635 (D.Del.2003); Glaxo Group Ltd. v. Apotex, Inc., 2001 WL 1246628 (N.D.Ill.2001); Pfizer Inc. v. No-vopharm Ltd., 2001 WL 477163 (N.D.Ill.2001).
Because we conclude that the magistrate judge correctly analyzed the pertinent opinions of the Supreme Court and this court on the scope of the jury trial in the procedural setting of this case, we deny the petition for a writ of mandamus.[3]

DENIED.

. Although the Supreme Court vacated the order of this court in Lockwood when, after *1289 the Court granted certiorari, Lockwood withdrew his request for a jury trial, we have continued to rely on the "relevant and detailed analysis” in Lockwood, which contains this court's most extensive discussion of the historical and legal framework for analyzing the jury trial right in connection with actions involving claims of patent infringement and invalidity. Tegal, 257 F.3d at 1340. Accordingly, as we stated in Tegal, the court's analysis in Lockwood "has been neither supplanted nor questioned,” and "we find its reasoning pertinent." Id.

. The dissent bases its analysis largely on the historical jury trial right that accompanied a writ of scire facias, notwithstanding Lockwood’s clear ruling that the writ of scire facias (an action by the sovereign to cancel a patent obtained by fraud) is not analogous to the modern-day action to invalidate a patent. Thus, cases such as United States v. Am. Bell Tel. Co., 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450 (1888), which was an action by the United States to cancel a patent that was allegedly obtained by fraud, do not govern this case. Moreover, all of the nineteenth century cases cited by the dissent were infringement actions for damages in which the defense of patent invalidity was raised. Because they were actions at least in part for damages, the parties were entitled to a jury trial on the issue of patent invalidity, just as they would be today. Those cases do not address, and certainly do not decide, the very different issue presented in this case, in which only equitable’relief is sought. Finally, the Supreme Court’s decision in Root v. Railway Co., 105 U.S. 189, 26 L.Ed. 975 (1881), supports the magistrate judge’s decision in this case, not the dissent. In that case, the plaintiff sought only an accounting of the defendant's profits in a patent infringement case. The Supreme Court held that because damages in the amount of the defendant’s profits could be awarded by a court of law, there was an adequate remedy at law and thus an equity court had no jurisdiction in the case. In the course of its opinion, however, the Court noted that the issues of infringement and patent validity could be tried before an equity court if the suit was “a suit for relief against an infringement,” e.g., for injunctive relief, as opposed to "an action for an infringement,” i.e., for damages. Id. at 206. This case is one "for relief against an infringement” and therefore the suit, including the issue of patent invalidity would have been triable in equity, without the right to a jury, at the time of Root.

. In its reply to the response to the petition for mandamus, TLC raises for the first time the argument that its request for damages on various state law claims that have been stayed pending disposition of the patent claims gives rise to a right to a jury with respect to the patent action. Because that argument was not raised in the petition, but only in the reply, we decline to address it. See Hannon v. Dep’t of Justice, 234 F.3d 674, 680 (Fed.Cir.2000); Commercial Contractors, Inc. v. United States, 154 F.3d 1357, 1367 (Fed.Cir.1998).